IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TERRY HAMILTON,  **Plaintiff,**  v.  CITY OF JACKSON, et al.,  **Defendants.** | CV No. 06-164-KD-C |

## ORDER

Before the Court is the Defendants' Motion for Summary Judgment, the Plaintiff's Response, the Defendants' Reply, and all evidentiary materials offered in support thereof. (Docs. 30, 31, 32, 33, 38, 40, 41, 43). For the reasons given below, the Defendants' Motion for Summary Judgment is due to be GRANTED IN PART.

**I.     Factual Background[1] & Procedural History**

Plaintiff Terry Hamilton ("Hamilton") filed this suit against officers of the Jackson Police Department, the Chief of the Jackson Police Department, and the City of Jackson as a result of an incident that occurred on or about March 17, 2004, at the Jackson Police Department.[2] (Doc. 1). In sum, the Complaint and response to summary judgment allege that Hamilton met his stepdaughter, Renita Greer ("Greer"), at the Jackson Police Department to discuss an altercation between Greer's son, Blake Hartley, and another young man. (Docs. 1, 40). Both Greer and

---

[1] The factual background provided here is construed in the light most favorable to the Plaintiff.

[2] In various pleadings filed with this Court, the date of the incident is given alternatively as March 16, 2004, and March 17, 2004.

Hamilton were dissatisfied with the police department's decision not to arrest or charge the other man involved in the altercation. (Docs. 40; 41-2 at 2-4).  When the pair met at the Jackson Police Department Building, they initially met with Defendant Barry Fowler ("Fowler"), an officer with the Jackson Police Department.  (Docs. 40; 41-2 at 3-4).  They were escorted into a supervisor's office, and were followed by Defendants Aaron Carpenter ("Carpenter), Daryl Jackson ("Jackson"), and Gary Garrett[3] ("Garrett"), all of whom are officers with the Jackson Police Department. (Docs. 40; 41-2 at 4-7).  Once in the supervisor's office Fowler sat behind a desk and Hamilton and Greer sat together on the opposite side of the desk. (Docs. 40; 41-2 at 4-7). Officers Jackson, Garrett, and Carpenter stood in varying positions between Hamilton and Greer and the doorway. (Docs. 40; 41-2 at 6-7).

During the conversation with Fowler, Hamilton and Greer "eventually felt they were getting nowhere." (Doc. 40).  Hamilton then suggested to Greer that they go talk to the Mayor of Jackson and stood to leave.  (Docs. 40; 41-2 at 8-9 ).  Greer got up to follow Hamilton and then Officer Fowler came from his side of the desk, pushed Greer out of the way, and "grabbed Hamilton with one hand, pressed him up against the door . . . and then grabbed Hamilton by the throat with the other hand." (Docs. 40 at 2; see 41-2 at 9-11).  "Hamilton was then grabbed on each arm by [Officers] Carpenter and Jackson.  Fowler had his hand on both sides of Hamilton's throat." (Docs. 40 at 2; see 41-2 at 9-11).  Fowler held Hamilton by the throat and squeezed for 30-40 seconds "almost causing Hamilton to blackout and lose consciousness."  (Docs. 40; see 41-2 at 9-11, 15-17).  "While Fowler was choking Hamilton, Fowler said, 'Terry Hamilton, you are

---

[3] Though originally named as a Defendant in the Plaintiff's Complaint, Officer Gary Garrett has been dismissed from this litigation pursuant to the Plaintiff's Motion (doc. 37) and this Court's Order of June, 11, 2007. (Doc. 47).

not going to threaten me. I will lock you up in a cell.'" (Docs. 40 at 2, see 41-2 at 11-12). Officer Fowler eventually released his grip and told Hamilton to sit in the chair. (Docs. 40 at 2; 41-2 at 11). Hamilton complied and requested some water, which he received. (Docs. 40 at 2; 41-2 at 8-11). Fowler continued his statement that he would not be threatened. (Docs. 40 at 2; 41-2 at 8-11). Eventually, after 8-10 minutes, Hamilton was allowed to leave the Jackson Police Department. (Docs. 40 at 2; 41-2 at 14).

The Chief of the Jackson Police Department, Charles Burge ("Burge"), arrived at the Police Department after the incident occurred. (Doc. 32-7 at 11). The Plaintiff was not present when Burge arrived. (Doc. 32-7 at 10). Officer Fowler informed Chief Burge that Mr. Hamilton had become irate and had to be restrained during a conversation at the police station regarding an incident involving his (step) grandson. (Doc. 32-7 at 9). Chief Burge instructed the officers to write statements of what they had observed. (Docs. 32-7 at 9; 41-13; 41-14). Burge reviewed the statements provided by the officers and concluded that no policy or procedural general order had been violated by any member of the police department. (Doc. 32-7 at 4-6).

Officer Fowler has been employed as a Police Officer for the City of Jackson for 24 years. (Doc. 32-5 at 3). Jackson has been employed with the Jackson Police Department for five years. (Doc. 32-6 at 3). Officers Carpenter, Fowler, and Jackson have completed the minimum standard training required by the State of Alabama for sworn law enforcement officers. (Docs. 32-8 at 2-3; 41-10; 41-11; 41-12). All members of the Jackson Police Department have continued to meet their state mandated training requirements each year. (Doc. 32-7 at 12). No meritorious claims of excessive force have been filed with the Jackson Police Department against Officers Fowler, Carpenter, or Jackson. (Doc. 32-8 at 3).

Plaintiff's Complaint asserts five counts. Count One asserts that the City of Jackson, Alabama ("the City") and Burge as the Chief of the Jackson Police Department, negligently failed to properly train and/or supervise officers Fowler, Carpenter, Garrett and Jackson. (Doc. 1 at 4). Count Two asserts a battery claim against Officers Fowler, Carpenter, and Jackson. (Doc. 1 at 5). Count Three alleges false imprisonment against Officers Fowler, Carpenter, and Jackson. Court Four alleges outrage against Officers Fowler, Carpenter, and Jackson. (Doc. 1 at 6). Lastly, Count Five alleges violation of Title 21, United States Code Section 1983 against all defendants.[4] (Doc. 1 at 7).

## II.   Applicable Standard

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[5] The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary

---

[4] A review of Count Five of the complaint, reveals at best only an ambiguous Section 1983 claim against the City of Jackson. However, as explained *infra*, a suit against the officers in their official capacity is the functional equivalent of a suit against the City. Moreover, in the pre-trial document the parties have agreed that a triable issue is whether the City is liable under Section 1983. (Doc. 46 at 4). Thus, the court has liberally construed the complaint to include a Section 1983 claim against the City.

[5] Rule 56(c) of the Federal Rules of Civil Procedure, provides that summary judgment shall be granted:

> [I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

judgment always bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 317. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992)(internal citations and quotations omitted), cert denied, 507 U.S. 911, 113 S.Ct. 1259, 122 L.Ed. 2d 657 (1993). Thus, the court's role at the summary judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The mere existence of any factual dispute, however, will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Secretary of Dept. of Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004), cert denied, 534 U.S. 1081, 125 S.Ct. 869, 160 L.Ed.2d 825 (2005).

**III.    Analysis**

    *A.    42 U.S.C. § 1983*

Plaintiff alleges constitutional violations against the defendants pursuant to 42 U.S.C. § 1983 ("Section 1983"). Actions brought in federal court to address and remedy a violation of the Constitution by a state actor are enabled through Section 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983. In order "[t]o sustain a cause of action based on section 1983, [a plaintiff] must establish two elements: (1) that [he] suffered a deprivation of rights, privileges or immunities secured by the Constitution and laws of the United States, and (2) that the act or omission causing the deprivation was committed by a person acting under color of law." Wideman v. Shallowford Community Hosp., Inc., 826 F.2d 1030, 1032 (11th Cir.1987) (internal quotations and citation omitted).

"To state a Section 1983 claim the plaintiff must establish that the conduct complained of was committed by a person acting under color of state law and that this conduct deprived the plaintiff of a federal constitutional or statutory right." Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). However, "[s]ection 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994)(quoting Baker v. McCollan, 443 U.S. at 144). Thus, the first step in analyzing any such claim is to identify the specific constitutional right allegedly violated by the defendant. Albright v. Oliver, 510 U.S. at 271. Once the particular constitutional right is determined, the court must then apply the standard applicable to that

particular constitutional provision to determine whether a constitutional violation has actually occurred. Graham v. Connor, 490 U.S. 386, 394 (1989).  In addition, plaintiff must establish a causal connection between the defendant's actions, customs, policies, or statutorily imposed duties and the alleged deprivation of plaintiff's constitutional right in order to state a claim upon which relief may be granted. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986); Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir.), cert. den., 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983).

The Plaintiff has alleged the Defendants violated his rights to be secure in his person and free of excessive force under the Fourth and Fourteenth Amendments. (Doc. 1 at 6-8).  The Fourth Amendment safeguards "[t]he right of the people to be secure in their person, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. In Graham v. Connor, 490 U.S. 386, 395 (1989), the Supreme Court determined that the Fourth Amendment applies to all claims alleging a police officer used excessive force in the course of an arrest, investigatory stop or other "seizure" of a free citizen.  In that case, the Court stated:

> Where, as here, the excessive force claim arises in the context of an arrest or an investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable seizrures' of the person.

Graham v. Connor, 490 U.S. at 394.  Therefore, the Plaintiff's claim of unreasonable or excessive force must be analyzed under the Fourth Amendment.

The Fourth Amendment standard for analyzing an excessive force claim requires a "careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against countervailing governmental interests at stake." Graham v. Connor, 490 U.S. at 395-96 (quoting Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85

L.Ed.2d 1 (1985)).  The court must look to see whether the actions of the individual officer are "objectively reasonable" in light of the facts and circumstances confronting the officer at that time. Graham v. Connor, 490 U.S. at 397.  "The 'reasonableness' of a particular use the force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." Graham v. Connor, 490 U.S. at 396 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).  Indeed, "'not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." Graham v. Connor, 490 U.S. at 396 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgment – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S. at 396-97.  Relying on Graham, the Eleventh Circuit cautioned as follows:

> In making an excessive force inquiry, we are not to view the matter as judges from the comfort and safety of our chambers, fearful of nothing more threatening than the occasional paper cut as we read a cold record accounting of what turned out to be the facts. We must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction could prove fatal.

Crosby v. Monroe County, 394 F.3d 1328, 1334 (11th Cir. 2004).

This framework for the analysis of a Section 1983 claim based on an alleged Fourth Amendment violation allows for a review of the reasonableness of the law enforcement official's actions based on the particular circumstances in each case.  In the context of an excessive force claim during an investigatory stop or interrogation, a constitutional violation may occur "when a suspect 'poses no threat to [the officers'] safety or that of others and [the suspect] does not otherwise initiate action which would indicate to a reasonably prudent police officer that the use

of force is justified." Ikerd v. Blair, 101 F.3d 430, 434 (5th Cir. 1996) (citing Ware v Reed, 709 F.2d 345, 351 (5th Cir. 1983)). On the other hand, police are entitled to take "reasonable action, based upon the circumstances, to protect themselves during investigative detentions." United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir.1989) (citing United States v. Kapperman, 764 F.2d 786 (11th Cir. 1985) and United States v. Roper, 702 F.2d 984, 988 (11th Cir. 1983)).

### i.   *Individual Capacity of Officers Fowler, Carpenter, and Jackson*

The individual defendants, Officers Fowler, Carpenter and Jackson, assert a defense of qualified immunity as to the claim brought pursuant to Section 1983.[6] "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) quoting Harlow v.Fitzgerald, 457 U.S. 800, 818 102 S.Ct. 2727, 73 L.Ed.2d 396 (1992)). To be entitled to qualified immunity, an individual defendant must first show that he was a public official acting within his discretionary authority when the allegedly wrongful acts occurred. Wood v. Kesler, 323 F.3d 872, 877(11th Cir. 2003). The defendants have met their burden to establish that they were acting within their discretionary authority when the incident occurred.

Next in the qualified immunity analysis, the court must consider whether a constitutional violation occurred. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 73 (2002). In other words, the court must first determine whether the plaintiff has even alleged a constitutional violation at all prior to addressing the question of whether the

---

[6] The complaint cannot be reasonably construed as asserting a Section 1983 individual capacity claim against defendant Burge.

constitutional right was clearly established at the time of the incident. Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If the court determines, looking at the facts in a light most favorable to the plaintiff, that a constitutional right would have been violated, the second step is to ask whether that particular right was clearly established at the time. Saucier v. Katz, 533 U.S. at 201. An officer is entitled to qualified immunity on an excessive force claim unless every reasonable officer would conclude the force was unlawful. Slicker v. Jackson, 215 F.3d 1225, 1232 (11th Cir. 2005).

Assuming, as the Plaintiff claims, that the officers grabbed and choked him merely because he attempted to leave to see the Mayor of Jackson, the Plaintiff's Consitutional right to be free from excessive force has been violated. Moreover, there is no question that this right is clearly established. Thus, the officers in their individual capacities are not entitled to summary judgment on this claim.

### ii.     Official Capacity of Officers

The Plaintiff has also asserted a cause of action against Burge, Fowler, Carpenter and Jackson in their official capacities as officers for the City of Jackson Police Department based upon 42 U.S.C. Section 1983. The court finds that Plaintiff's Section 1983 claims against the individual Defendants in their official capacities are redundant and, therefore, due to be dismissed. When an officer is sued under Section 1983 in his or her official capacity, the suit is simply "another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). "Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991). Accordingly, this Court finds that Plaintiff's Section 1983 claims against Defendants Chief of Police Burge and

Officers Fowler, Carpenter, and Jackson in their official capacities are due to be DISMISSED because Plaintiff also has brought his Section 1983 claims against the City.[7]  See Roberts v. City of Geneva, 114 F.Supp.2d 1199, 1210 (M.D. Ala. 2000).

### iii.     City of Jackson

To the extent the Plaintiff's Section 1983 claim is asserted against the City of Jackson, Defendants argue that the City is also entitled to summary judgment.  Under Section 1983, there is no respondeat superior liability. Thus, a municipality may not be sued under Section 1983 for the acts of others but, rather, only for its own acts. See Monell v. Dept. of Social Serv., 436 U.S. 658, 691-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)  In order to state a claim under Section 1983 against the City of Jackson, the Plaintiff must show that he suffered a constitutional injury, and that his injury was caused by "a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690.

The governmental custom or policy involved must be the "moving force" behind the alleged constitutional violation and respondeat superior is not an appropriate vehicle to hold a municipality liable. See Monell, 436 U.S. At 691, 694. Thus, in the instant case, the Plaintiff must show either that the alleged violation in question was "caused by an existing unconstitutional municipal policy, which policy can be attributed to a municipal policy maker" or that the alleged violation is attributable to "inadequate police training." Schmelz v. Monroe County, 954 F.2d 1540, 1544 (11th Cir. 1992); Martinez v. City of Opa-Locka, Florida, 971 F.2d 708, 713 (11th Cir. 1992).

The plaintiff has failed to point to any policy or custom of the City was the moving force

---

[7] *See* fn. 4,

behind any alleged constitutional violation. Moreover, there is no evidence in the record to support the contention that any official policy or custom of the City of Jackson was the impetus behind any alleged unconstitutional actions of the individual officers. In addition to the fact that the Plaintiff has failed to identify any unconstitutional policy of the City of Jackson, there has also been no showing that the Plaintiff's claims can be tied to any policy attributable to a final policy maker for the City of Jackson.

In the absence of an unconstitutional policy, inadequate police training may establish Section 1983 liability. City of Canton v. Harris, 489 U.S. 378 (1989).The Supreme Court has stated that there are only "limited circumstances" in which an allegation of a failure to train or supervise can be the basis for liability under Section 1983. Canton 489 U.S. at 387. These "limited circumstances"occur only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy results in the employees violating a citizen's constitutional rights. It is only when the failure to train amounts to "deliberate indifference" that it can properly be characterized as a "policy" or "custom" necessary for Section 1983 liability to attach. Canton 489 U.S. at 389. To establish a "deliberate or conscious choice" or such "deliberate indifference, a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action. Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 407-09 (1997).

There is insufficient evidence in the record to support a claim that the City of Jackson was deliberately indifferent to the need to train in the officers in the use of excessive force. The defendant has presented the sworn affidavit of Chief Burge which indicates Fowler, Carpenter and Jackson have completed and maintained the State of Alabama mandatory training for law

enforcement officers. (Doc. 32, Exh. 7) Moreover, Chief Burge avers that there have been no past meritorious claims of excessive force against the individual officers. Id.

In response, the plaintiff summarily states that the City of Jackson was negligent in the training of the officers and then states that the "training record of each officer reveals that no training occurred." (Doc. 40 at 5) However, the plaintiff fails to cite to any evidence in support or elaborate on his argument. Instead the plaintiff has filed numerous training records of the officers and apparently expects the court to sort them and interpret them in his favor. A party may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting its position. See, e.g., Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so."); accord Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989); Lawson v. Sheriff of Tippecanoe County, 725 F.2d 1136, 1139 (7th Cir. 1984); Karlozian v. Clovis Unified School District, 2001 WL 488880 at *1 (9th Cir. 2001); see also Local Rule 7.2. Accordingly, this Court's review is limited to those specific portions of the submitted evidentiary materials to which the parties have expressly drawn the Court's attention. Similarly, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995). In this instance, the plaintiff has failed to present sufficient evidence to support a claim that the City of Jackson knew of a need to train and/or supervise in a particular area and then made a deliberate choice not to take any action. Accordingly, summary judgment is due to be GRANTED on this claim.

### B.     *State Law Claims*

#### i.     *Negligent Training & Supervision*

Plaintiff alleges that Defendants City of Jackson and Police Chief Burge negligently hired, trained, and/or supervised Officers Fowler, Carpenter, and Jackson. (Doc. 1 at 4). With regard to the claim against Police Chief Burge, the Defendants respond that discretionary function and statutory immunity preclude his liability and, in turn, any extension of liability to the City of Jackson.  (Doc. 31 at 26-27).

As it concerns the claims asserted under Alabama law, by statute, a municipality may only be held liable for injuries caused by the negligence of its agents or employees. Code of Alabama § 11-47-190 ("Section 11-47-190") provides as follows:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefore and while acting in the line of his or her duty…

Municipal liability under Section 11-47-190 is based on the doctrine of respondeat superior.  Ott v. City of Mobile, 169 F.Supp.2d 1301, 1314 (S.D. Ala. 2001).  Thus, "[f]or the employer to be liable under that doctrine, the employee must first be a liable for a tort."  Id. "If the agent is not liable for any tort, the principal is also absolved." Id. (citing Latham v. Redding, 628 So.2d 490, 495 (Ala. 1993)).  Thus, to survive a motion for summary judgment, the Plaintiff must show that Alabama law recognizes a cause of action against a supervisory employee for the negligent training or supervision of a subordinate.

In Ott v. City of Mobile, the District Court examined this very issue and held that under Alabama law, no cause of action exists against a supervisory employee for the negligent training

or supervision of a subordinate. 169 F. Supp. 2d 1301, 1314-16 (S.D. Ala. 2001)("Because . . . Alabama recognizes no such cause of action against [the supervisory employee], he cannot be liable for negligence and the City cannot be vicariously liable for his negligence."). This claim was addressed again in Styron v. City of Foley, 2005 WL 3098926 (S.D. Ala. 2005). In Styron, the District Court, citing Ott, held that "Alabama does not recognize an action against a municipality for negligent hiring, supervising, or training". Id. at *5 (citing Ott, 169 F. Supp. 2d at 1315). Accordingly, Police Chief Burge cannot be liable for negligent training or supervision because no such cause of action exists under Alabama law. Moreover, this claim must also fail against the City of Jackson since itsliability, if any, flows derivatively from its employee. Here, the employee is without liability ergo the City of Jackson is also without liability.

Alternatively, assuming *arguendo* that a claim for negligent supervision, hiring, and training exists under Alabama law, the Plaintiff has failed to present evidence regarding the City of Jackson's constructive awareness of the Officers' incompetency. The defendant has cited to unrebutted evidence that the Officers had completed and maintained the State's mandatory training standards and that no meritorious claims of excessive force had been previously filed against these Officers.

Summary judgment is also due to be granted  because Chief Burge and the City are entitled to immunity.[8] In Vaughn v. City of Athens, 176 Fed. App'x  974. 978 (11th Cir. 2006) (unpublished opinion), the Eleventh Circuit addressed plaintiff's argument that the defendants were not entitled to discretionary function immunity on negligent training and supervision claims

---

[8] Defendants raised the affirmative defenses of qualified immunity, common law discretionary immunity, statutory law enforcement discretionary function immunity. (Doc. 7 at 5).

without mention as to whether negligent training and supervision was a viable claim under Alabama law. Instead the court in Vaughn discussed the application of discretionary function immunity under Ala. Code § 6-5-338(a) wherein peace officers are granted statutory immunity from tort liability when acting within the line and scope of their law enforcement duties. The section provides as follows:

> Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

Ala. Code § 6-5-338(a). Paragraph (b) states that "[t]his section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers." Ala.Code § 6-5-338(b). In Ex parte City of Gadsden, 781 So.2d 936, 940 (Ala. 2000), the Alabama Supreme Court construed subsection (b) as extending discretionary-function immunity to a city.

Also, in Vaughn, the Eleventh Circuit discussed the burden upon plaintiff when defendants assert the defense of immunity under Ala. Code § 6-5-338(a). In order to deny immunity, plaintiff must show that the defendants "'acted in bad faith, with malice or willfulness[.]'" Vaughn, 176 Fed. App'x at 978 (quoting Sheth v. Webster, 145 F. 3d 1231, 1238 (11th Cir. 1998)). Plaintiff alleged in Count One of the complaint that the defendants conduct

was willful, gross and oppressive, however, the record is void of any evidence of such conduct. Therefore, even should Alabama recognize negligent failure to train and supervise as a tort, Chief Burge would be entitled to immunity from tort liability for his performance of this discretionary function and the City would also be entitled to immunity.

### ii.     *Battery & False Imprisonment*

Counts Two and Three, respectively, of the Complaint allege battery and false imprisonment against Officers Fowler, Carpenter, and Jackson. (Doc. 1 at 5). The Complaint alleges that the Defendants acted intentionally, wantonly, recklessly, and/or maliciously in attacking Hamilton. (Doc. 1 at 5). In order to establish a battery under state law the plaintiff : (1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner. Ex parte Atmore Cmty. Hosp., 719 So.2d 1190 (Ala. 1998).

Summary judgment is not appropriate on the battery claim as the record before the Court indicates that genuine issues of material fact exist. For example, there is a factual dispute regarding whether Officer Fowler placed his hand on Hamilton's throat and choked him. Officer Fowler maintains that he did not (doc. 41-4 at 21); Hamilton avers that Officer Fowler did (doc. 41-2 at 9-12). Additionally, there is considerable conflict regarding whether the Hamilton was acting in a menacing way, i.e., approaching the officers with "fists balled up, slinging his arms" and in a hostile manner. (Doc. 40 at 3; 41-7 at 10-13). All of the Officers admit that they grabbed or touched Hamilton on various parts of his body because Hamilton was loud, boisterous, and disorderly and they were attempting to restore order. (Docs. 41-4 at 3-6; 41-6 at 13-15; 41-7 at 11).

Alabama law defines false imprisonment as the "unlawful detention of the person of

another for any length of time whereby he is deprived of his personal liberty." <u>Crown Cent. Petroleum Corp. v. Williams</u>, 679 So.2d 651, 653 (Ala. 1996). There must be some direct restraint of the person in order for a false imprisonment to occur, but it is not necessary that there be a confinement in a jail or a prison. <u>Id.</u> "Any exercise of force, or the express or implied threat of force, by which in the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment." <u>Id.</u> at 653-54. Again, genuine issues of material fact are in dispute. In addition to the above cited factual disputes, discrepancies exist with regard to whether the officers forcibly placed Hamilton in the chair after the "scuffle" had ended or if Hamilton sat pursuant to his own volition. (Docs. 41-4 at 3-6; 41-6 at 13-15; 41-7 at 11). Additionally, the location of the "scuffle" is disputed by the testimony of the various officers; there is testimony that it occurred in the hallway and also contradictory testimony that is occurred in the office. (Docs. 41-4 at 3-6; 41-6 at 13-15; 41-7 at 11).

### *iii.    Outrage*

Count Four of the Plaintiff's Complaint asserts the tort of outrage against Defendants Officers Fowler, Carpenter, and Jackson. (Doc. 1 at 6). Plaintiff states that the officers' behavior "was egregious, extreme, outrageous, and was designed to inflict emotional distress...." (Doc. 1 at 6). In order for the Plaintiff to prevail under the tort of outrage, he must prove the following: (1) that the Defendant either intended to inflict emotional distress, or knew or should of known that emotional distress was likely to result from his conduct; (2) that the Defendant's conduct was extreme and outrageous, and (3) that the Defendant's conduct caused emotional distress so severe that no reasonable person could be expected to endure it. <u>Callens v. Jefferson County Nursing Home</u>, 769 So.2d 273, 281 (Ala. 2000). The Supreme Court of Alabama has recognized the tort

of outrage in only three areas: wrongful conduct within the context of family burial; an insurance agent coercing an insured into settling an insurance claim; and egregious sexual harassment. Id. (citing Thomas v. BSE Indus. Contractors, Inc., 624 So.2d 1041 (Ala. 1993). The tort of outrage is limited to egregious circumstances. Id.  Therefore, the elements of the tort of outrage are only found in rare circumstances. Barton v. American Red Cross, 829 F.Supp. 1290 (M.D. Ala. 1993).  In this case, the Plaintiff has not produced sufficient evidence that he has suffered emotional distress so severe that a reasonable person could not be expected to endure it. The Defendants' conduct could not be described as so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as "atrocious and utterly intolerable in a civilized society." See Thomas v. BSE Industrial Contractors, Inc., 624 So.2d 1041 (Ala. 1993), citing American Road Service Company v. Inmon, 394 So.2d 361 (Ala. 1981).  Accordingly, summary judgment is due to be GRANTED in favor or the Defendants on the Plaintiff's outrage claim.

**V.     Conclusion**

For all of the reasons discussed herein, the Defendants Motion for Summary Judgement is due to be granted in part.  Therefore, it is ORDERED, ADJUDGED and DECREED that:

(1)     Summary Judgment on all claims brought against Defendants Officers Fowler, Carpenter, and Jackson in their official capacities is GRANTED in favor of the Defendants.

(2)     Summary Judgment is GRANTED in favor of the Defendant sCity of Jackson and Police Chief Burge, in his official and individual capacities, for Count One Negligent Training and Supervision.

(3)     Summary Judgement is DENIED against Defendants Fowler, Carpenter, and

Jackson for Count Two Battery.

(4)   Summary Judgment is DENIED against Defendants Fowler, Carpenter, and Jackson for Count Three False Imprisonment.

(5)   Summary Judgment is GRANTED in favor of Defendants Fowler, Carpenter, and Jackson for Count Four Outrage.

(6)   Summary Judgment is DENIED against Defendants Officers Fowler, Carpenter, and Jackson in their individual capacities in Count Five 42 U.S.C. § 1983.

**DONE** and **ORDERED** this the 13th day of June, 2007.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**